## D.A. PINCUS AND COMPANY, INC. *v.* JAMES F. MEEHAN, COMMISSIONER OF REVENUE SERVICES
### (15175)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued December 7, 1995—decision released January 30, 1996

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*William H. Narwold*, with whom, on the brief, was *Charles D. Ray*, for the appellee (plaintiff).

KATZ, J. The principal issue in this appeal is whether the difference in tax treatment that General Statutes § 12-217 (a) (A) accords investments in federally tax-exempt municipal bonds and federally taxable bonds with respect to the deductibility of interest expenses incurred in holding such investments violates the equal protection clauses of the state and federal constitutions. We conclude that it does not.

The following pertinent facts are undisputed. The plaintiff, D.A. Pincus and Company, Inc., is a properly registered broker-dealer that is engaged solely in the business of buying municipal obligations and selling them primarily to other broker-dealers. The plaintiff earns interest income on its inventory of municipal bonds. In order to maintain its inventory of such bonds, the plaintiff borrows money on which it pays interest.

For the fiscal years ending on October 31, 1983, 1984, 1985, 1986, and 1987, the plaintiff was qualified to do business in Connecticut, and consequently, was subject to the Connecticut corporation business tax. See General Statutes § 12-213 et seq. The plaintiff timely filed its tax returns for those years as required and timely paid in full all taxes and other charges as reported by the plaintiff to be due thereon. In those returns, the plaintiff included in its gross income all interest that it received from its inventory of municipal obligations. The plaintiff in turn deducted from its gross income

the interest expenses on the indebtedness incurred to carry the municipal obligations.

Subsequent to October 31, 1985, the defendant, the commissioner of revenue services, examined the plaintiff's Connecticut corporation business tax returns for the fiscal years ending on October 31, 1983, 1984 and 1985. On the basis of his interpretation of § 12-217 (a) (A),[1] the defendant concluded that the plaintiff had improperly deducted the interest expenses. Accordingly, the defendant added those amounts back into the plaintiff's gross income. Thereafter, the defendant mailed a notice to the plaintiff of an assessment of additional tax due in the amount of $24,867, plus interest for those years. Pursuant to General Statutes § 12-236,[2] the plaintiff requested a hearing and correction of that tax assessment. The defendant subsequently examined

[1] General Statutes § 12-217 provides in relevant part: "Deductions from gross income. Net income of S corporations. (a) In arriving at net income as defined in section 12-213, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted from gross income, (A) all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year . . . ."

[2] General Statutes § 12-236 provides: "Hearing by commissioner. Any taxpayer, aggrieved by the action of the commissioner or his authorized agent in fixing the amount of any tax, penalty or interest provided for by this part, may apply to the commissioner, in writing, within sixty days after the notice of such action is delivered or mailed to it, for a hearing and a correction of the amount of the tax, penalty or interest so fixed, setting forth the reasons why such hearing should be granted and the amount in which such tax, penalty or interest should be reduced. The commissioner shall promptly consider each such application and may grant or deny the hearing requested. If the hearing is denied, the applicant shall be notified thereof forthwith. If it is granted, the commissioner shall notify the applicant of the time and place fixed for such hearing. After such hearing the commissioner may make such order in the premises as appears to him just and lawful and shall furnish a copy of such order to the applicant. The commissioner may, by notice in writing, at any time within three years after the date when any return of any taxpayer has been due, order a hearing on his own initiative and require the taxpayer or any other individual whom he believes to be in possession of relevant information concerning the taxpayer to appear before him or his authorized agent with any specified books of account, papers or other documents, for examination under oath."

the plaintiff's Connecticut corporation business tax returns for the fiscal years ending on October 31, 1986, and 1987 and, similarly concluding that the plaintiff had improperly deducted the interest expenses from its gross income, mailed a second notice to the plaintiff of an assessment of additional tax due in the amount of $16,342, plus interest for those years. Again, the plaintiff filed a request for a hearing and correction of the tax assessed by the defendant. After a hearing, the defendant denied both requests for correction.

Thereafter, pursuant to General Statutes (Rev. to 1995) § 12-237,[3] the plaintiff appealed to the trial court from the defendant's adverse decisions. In both appeals, the plaintiff claimed that if § 12-217 (a) (A) allows a broker-dealer carrying a portfolio of federally taxable bonds to deduct the interest expenses incurred in con-

---

[3] General Statutes (Rev. to 1995) § 12-237 provides: "Appeal. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of nine per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

Section 12-237 was amended by No. 94-4 of the 1994 Public Acts, decreasing the interest rate to 8 percent effective July 1, 1995.

nection with those bonds, but does not allow a broker-dealer carrying a portfolio of federally tax-exempt bonds to deduct the interest expenses incurred in connection with those bonds,[4] in the absence of a rational basis for the disparate treatment of such broker-dealers, both of whose earned interest is taxable for state tax purposes, the statute violates the equal protection clauses of the state and federal constitutions.[5] The appeals were consolidated for trial. The trial court, *Blue, J.*, concluded that § 12-217 (a) (A) did violate the equal protection clauses and sustained the appeal. The defendant thereafter appealed to this court pursuant to General Statutes § 51-199 (b) (2). We reverse the judgments of the trial court.

The parties agree that, unlike the federal government, the state of Connecticut, pursuant to General Statutes § 12-213,[6] does not exclude from gross income the inter-

---

[4] The plaintiff advanced two arguments to the trial court. First, the plaintiff argued for an interpretation of § 12-217 (a) (A) that would support its claim that the interest expenses were deductible. Alternatively, the plaintiff agreed that if § 12-217 (a) (A) does not allow it to deduct interest expenses incurred to maintain its municipal bond portfolio, the statute is unconstitutional. The trial court rejected the plaintiff's statutory argument. The plaintiff does not challenge that determination on appeal. Rather, the plaintiff has confined its claim in this appeal to the constitutional challenge it made to the trial court.

[5] Section 1 of the fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The constitution of Connecticut, article first, § 20, as amended by article twenty-one of the amendments provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[6] General Statutes § 12-213 provides in relevant part: "Definitions. . . . '[G]ross income' means gross income as defined in the federal corporation net income tax law in force on the last day of the income year and, in

est earned on municipal bonds for purposes of the corporation business tax. See *Connecticut Bank & Trust Co.* v. *Tax Commissioner*, 178 Conn. 243, 423 A.2d 883 (1979).[7] Accordingly, on its tax returns for the fiscal years 1983 to 1987, the plaintiff properly included the interest income earned on its portfolio of municipal obligations. The parties, however, disagree as to the application of § 12-217 (a) (A) to the interest paid on the indebtedness incurred to carry these municipal obligations. In order to understand the basis of their disagreement, and because § 12-217 (a) (A) partially depends on federal corporate tax law, we turn there first.

Pursuant to title 26 of the United States Code, § 103 (a),[8] interest income on municipal obligations is excluded from gross income as that term is defined in title 26 of the United States Code, § 61 (a) (1994).[9] Inter-

addition, means any interest received or interest paid by the taxpayer or losses of other calendar or fiscal years, retroactive to include all calendar or fiscal years beginning after January 1, 1935, incurred by the taxpayer which are excluded from gross income for purposes of assessing the federal corporation net income tax . . . ."

[7] In *Connecticut Bank & Trust Co.* v. *Tax Commissioner*, supra, 178 Conn. 247–49, we held that the corporation business tax is a franchise tax upon the privilege of carrying on business in this state in corporate form measured by net income. In arriving at net income as defined in § 12-213, the starting point is gross income as defined by that statute, which is federal net income with certain additions or deletions. Among the additions is interest received. The plaintiff does not challenge the requirement that the interest it receives from its municipal bond portfolio must be included in gross income. Its only challenge is to the defendant's application of § 12-217 (a) (A) in disallowing the plaintiff from deducting the interest expense incurred in carrying its municipal bond portfolio.

[8] Title 26 of the United States Code, § 103 (a) provides: "Except as provided in subsection (b), gross income does not include interest on any State or local bond."

[9] Title 26 of the United States Code, § 61 (a) provides: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

"(2) Gross income derived from business;

est income on corporate obligations, in contrast, is included in gross income. Additionally, although, as a general rule, title 26 of the United States Code, § 163 (a)[10] provides a deduction for all interest paid on corporate indebtedness, title 26 of the United States Code, § 265 (a) (2)[11] expressly provides that no deduction shall be allowed for interest on indebtedness incurred and paid in connection with carrying federally tax-exempt municipal obligations. Put simply, under the federal tax provisions, a taxpayer does not include the interest earned on municipal bonds in income and does not deduct the interest paid on money borrowed to carry these bonds. The taxpayer, however, must include the interest earned on corporate bonds and may deduct the interest expense incurred to carry those bonds.

In contrast, under Connecticut's corporate tax scheme, interest earned on both municipal and corporate obligations is included in the taxpayer's gross income. Furthermore, § 12-217 (a) (A) provides that, in general, only those items deductible under federal tax

---

"(3) Gains derived from dealings in property;

"(4) Interest;

"(5) Rents;

"(6) Royalties;

"(7) Dividends;

"(8) Alimony and separate maintenance payments;

"(9) Annuities;

"(10) Income from life insurance and endowment contracts;

"(11) Pensions;

"(12) Income from discharge of indebtedness;

"(13) Distributive share of partnership gross income;

"(14) Income in respect of a decedent; and

"(15) Income from an interest in an estate or trust."

[10] Title 26 of the United States Code, § 163 (a) provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

[11] Title 26 of the United States Code, § 265 (a) provides in relevant part: "No deduction shall be allowed for . . . (2) [i]nterest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle."

law are deductible in Connecticut. The plaintiff acknowledges that there is no specific deduction provided in Connecticut's corporation business tax law for interest expenses incurred in carrying a portfolio of municipal obligations. Therefore, broker-dealers in Connecticut who engage in the trade of federally taxable obligations, such as corporate bonds, who are also taxed in Connecticut on interest earned, receive a deduction for interest expenses incurred in connection with these obligations. On the other hand, broker-dealers in Connecticut, who engage in the sale of federally tax-exempt obligations, such as the plaintiff, who are similarly taxed in Connecticut on interest earned, do not receive a deduction on interest expenses incurred in carrying these obligations. Consequently, the type of obligation in which one deals dictates whether the related interest expenses are deductible for Connecticut corporation business tax purposes. Because the plaintiff cannot deduct the expenses incurred in maintaining its municipal obligations, it claims that it is being discriminated against in violation of the equal protection provisions of the state and federal constitutions.

The defendant responds that § 12-217 (a) (A) does not single out broker-dealers in municipal obligations from broker-dealers in corporate bonds as a particular class to whom differing treatment is afforded. Rather, all broker-dealers are treated alike in that all interest received is included in gross income under the Connecticut corporation business tax no matter what the nature, source or purpose of such interest received. Additionally, a broker-dealer who has investments in both corporate bonds and municipal bonds would be able to deduct the interest expenses related to corporate bonds but not the interest expense related to municipal bonds. The defendant maintains that this case involves two types of investment income, and that it is simply the type of security in which the plaintiff chose to deal that

brings about differing results. We agree with the defendant.

The plaintiff in this case sought a deduction from otherwise taxable income. Because deductions and exemptions from otherwise taxable income are matters of legislative grace, they must be strictly construed. *Yaeger* v. *Dubno*, 188 Conn. 206, 212, 449 A.2d 144 (1982). With that principle in mind, we turn to an examination of the plaintiff's claims.

The plaintiff chose to deal in municipal bonds. As we stated in *Bolt Technology Corp.* v. *Commissioner of Revenue Services*, 213 Conn. 220, 231–32, 567 A.2d 371 (1989), there is no constitutional significance to a taxpayer's voluntary decision to do business one way in preference to another. In *Bolt Technology Corp.*, we upheld the constitutionality of § 12-217 (a) (D) (1) despite the different tax treatment afforded to domestic international sales companies (DISCs) operating on a commission agent basis as opposed to those DISCs operating on a buy-sell basis. Id. "The taxpayers in these cases elected to do business by way of a commission agent DISC rather than by a buy-sell DISC. The fact that one method of doing business has less beneficial tax consequences than the other does not warrant this court's interference with the tax policies formulated by the legislature regarding DISCs. We, therefore, decline to attempt to equalize the tax consequences of the two DISCs by interpreting § 12-217 in a manner contrary to the plain words of the statute." Id.

In the present case, the trial court acknowledged that the statute does not single out broker-dealers in municipal obligations, but concluded, nevertheless, that the statute is unconstitutional because it is underinclusive in that it confers a benefit—an interest expense deduction—upon broker-dealers in federally taxable obligations, but not upon broker-dealers in federally

tax-exempt obligations. Additionally, the trial court found § 12-217 (a) (A) unconstitutional as applied on the theory that "[a tax] statute [like other statutes,] is unconstitutional, as applied, if it treats similarly situated persons differently and the different treatment does not rest upon some reasonable consideration of legislative policy." *Oxx* v. *Dept. of Taxes*, 159 Vt. 371, 376, 618 A.2d 1321 (1992).

We disagree with the trial court's reasoning. Section 12-217 (a) (A), in general, affords the same benefits to all corporate taxpayers. The plaintiff or any other broker-dealer can deduct expenses related to its federally taxable income and is precluded only from deducting expenses related to its federally tax-exempt income. Therefore, a taxpayer benefits from § 12-217 (a) (A) when it deducts expenses related to its federally taxable income. A classification scheme cannot be read into § 12-217 (a) (A), which treats all broker-dealers trading in municipal bonds similarly. Therefore, any classification created by the plaintiff's choice to deal only in municipal obligations is artificial and should have been rejected.[12]

Furthermore, equal protection challenges are premised on a classification drawn by a statute that discrimi-

---

[12] Cases in which reviewing courts have responded to a classification scheme include the following: *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313–20, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (upholding law requiring local franchising of operators of satellite master antenna and television facilities, but not private or wholly internal facilities); *Nordlinger* v. *Hahn*, 505 U.S. 1, 11–17, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992) (upholding California's real property tax system providing 1 to 2 percent ceiling on real property tax except for owners of newly purchased or newly constructed real estate); *Johnson* v. *Meehan*, 225 Conn. 528, 540–43, 626 A.2d 244 (1993) (upholding General Statutes § 12-297, which provides exemption from cigarette tax for patients and inmates residing in state hospitals, but not inmates in state correctional institutions); and *Kellems* v. *Brown*, 163 Conn. 478, 490–96, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973) (upholding tax on investment income from dividends but striking down exemption for unmarried widowed women).

nates against particular persons or classes of people. Because "[t]he equal protection clauses of the federal and state constitutions apply only to 'persons' "; *Benjamin* v. *Bailey*, 234 Conn. 455, 473, 662 A.2d 1226 (1995); and the plaintiff's challenge relates to classifications among bonds, the plaintiff has failed to raise a claim that falls within the scope of the constitutional guarantee it seeks to invoke. Compare *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 323–25, 417 A.2d 343 (1979) (invalidating, on due process and equal protection grounds, Sunday closing law drawing distinctions between stores that may sell items), with *State* v. *Hurliman*, 143 Conn. 502, 505–508, 123 A.2d 767 (1956) (upholding Sunday closing law drawing distinctions between type of items that may be sold).

Even if we were to conclude that § 12-217 (a) (A) creates a classification to which an equal protection analysis applies, the plaintiff could not prevail on the merits of this claim. "When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge. . . ." (Citations omitted; internal quotation marks omitted.) *Benjamin* v. *Bailey*, supra, 234 Conn. 477.[13]

---

[13] The trial court recognized that "[i]n appropriate circumstances, we have interpreted the equal protection provisions of the state constitution differ-

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." (Internal quotation marks omitted.) *Harbor Ins. Co.* v. *Groppo*, 208 Conn. 505, 509, 544 A.2d 1221 (1988). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement Bd.* v. *Fritz*, 449 U.S. 166, 174, 179, [101 S. Ct. 453, 66 L. Ed. 2d 368 (1980)], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S [432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]." *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

"In the context of tax legislation, a party challenging a statute on equal protection grounds has an even greater burden than equal protection challenges to other social and economic statutes that do not infringe upon a fundamental right or affect a suspect group. In tax matters, more so than in other fields, legislatures possess considerable liberty in classification. . . . Therefore, the presumption of constitutionality can be overcome only by the most explicit demonstration that the classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one

ently than that contained in the federal constitution . . . ." *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993). It further noted, however, that "the rational basis tests of the two constitutions appear on the basis of present jurisprudence to be substantially the same." The plaintiff does not suggest that a different test be utilized in our analysis of its claim under the state constitution.

attacking the legislative arrangement to negative *every conceivable basis* which might support it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Johnson* v. *Meehan*, 225 Conn. 528, 536–37, 626 A.2d 244 (1993).

Finally, we note that it is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature. "[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification. . . . This court's review requires only that the differing financial ability between the two groups may conceivably or may reasonably have been the purpose or policy of the relevant decisionmaker. . . . The legislature, cognizant of the constitutional guarantees of equal protection, must be deemed to have sought to attain a rational and sensible result that avoids placing a statute in constitutional jeopardy." (Citations omitted; internal quotation marks omitted.) Id., 539–40. "[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. . . . In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." (Citations omitted.) *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).

The dispositive issue before this court is whether the Connecticut legislature, in devising its taxation scheme, could conceivably justify disallowing tax deductions for interest expenses incurred in connection with maintaining a municipal bond portfolio when it allows such deductions for expenses incurred in connection with

maintaining corporate bonds. We agree with the defendant that there are conceivable reasons for the challenged distinction in treatment of corporate and municipal bonds.

The federal government has clearly conferred a benefit by exempting the interest income earned on municipal bonds from the federal net income tax. We assume that the Connecticut legislature has chosen to treat this type of investment differently from corporate bonds precisely because the income it generates, unlike income from corporate bonds, is not subject to federal tax. "[T]he tax laws may require tax-exempt income to pay its way." *United States* v. *Atlas Life Ins. Co.*, 381 U.S. 233, 247, 85 S. Ct. 1379, 14 L. Ed. 2d 358 (1965). Mindful that a corporation investing in municipal bonds is getting a federal tax advantage, the state has decided to take the opportunity to tax where the federal government has refrained and thereby gain additional revenue.[14]

The defendant argues as well that there is an additional rational basis for treating one category of income differently from another. The income generated from municipal bonds is generally less than that generated from corporate bonds because municipal bonds are exempt from federal tax and, generally, are a lower risk investment. Consequently, municipal bonds provide less revenue that is subject to Connecticut tax than do corporate bonds. Although the state is likely pleased to have money invested in its municipalities,[15] the deci-

---

[14] The plaintiff argues that this rationale is not satisfactory because the legislature did not deny the interest expense deduction to all corporations that earn interest on municipal obligations. For example, the plaintiff points out that regulated investment companies that invest in federally tax-exempt municipal bonds get the benefit of the interest expense deduction. For the reasons set forth in footnote 15, we are not persuaded by the plaintiff's argument.

[15] States may use their taxing power so as to encourage certain types of businesses. P. Hartman, Federal Limitations on State and Local Taxation

sion to disallow a deduction for interest expenses may have been an attempt to compensate for this reduced revenue.

Two principles have guided the resolution of this case. First, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Federal Communications Commission* v. *Beach Communications, Inc.*, supra, 508 U.S. 313. Second, it is

(1988) p. 153. Indeed, § 12-217 was amended in 1977 in order to confer the benefit of a deduction for expenses incurred by mutual funds (regulated investment companies) investing in tax-exempt bonds. The legislative history clearly reflects deliberate consideration of the fact that the statute operates to confer different treatment to corporations investing in corporate bonds and corporations investing in municipal bonds. Rather than extend the deduction for expenses to all corporations investing in municipal bonds, however, the legislature chose to allow the deduction only to mutual funds investing in municipal bonds. This statutory amendment was to "permit creation of a municipal bond fund here in Connecticut which would attract small investors into the municipal bond area . . . it is hoped that the formation of this fund will permit investments as low as $300.00 initially and $50.00 thereafter to be made which should encourage the capital market in Connecticut and help municipalities throughout the area." 20 S. Proc., Pt. 1, 1977 Sess., p. 378, remarks of Senator Audrey P. Beck. Although, as the plaintiff points out, the amendment eradicated the unequal treatment for mutual funds only, "[t]he legislature may select one phase of one field and apply a remedy there, neglecting the others." *Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955). Prior to the 1977 amendment, there had been no municipal bond funds in Connecticut. By allowing mutual funds investing in municipal bonds to deduct expenses, the legislature attempted to create a more favorable tax environment to attract such funds to Connecticut and to compete with sister states that did not tax their municipal bond funds. Additionally, it was an attempt to "bring municipal funds and all other mutual funds on a parity basis as far as taxes go." Conn. Joint Standing Committee Hearings, Finance, Pt. 1, 1977 Sess., p. 167. Through this amendment, the legislature addressed the phase of the problem it thought was most acute. Id.

well established that those who challenge the constitutionality of a state statute bear the heavy burden of demonstrating beyond a reasonable doubt that the presumption of its validity has been overcome. *Harbor Ins. Co.* v. *Groppo,* supra, 208 Conn. 510. To do this, the party attacking a tax statute has the burden of negating every conceivable basis that might support it. *Johnson* v. *Meehan,* supra, 225 Conn. 537.

Accordingly, because the plaintiff has failed to sustain its burden of proving that § 12-217 (a) (A) violates the equal protection clauses of the state and federal constitutions, we reverse the trial court's judgments and remand the case with direction to dismiss the plaintiff's appeals.

In this opinion the other justices concurred.