[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this appeal the plaintiff Federal Deposit Insurance Corporation (FDIC) seeks the refund of approximately $4.8 million in taxes and interest paid pursuant to the Connecticut Corporation Business Tax (CCBT). General Statutes §§ 12-213
through 12-242.
The FDIC raises two issues. Claiming the state has discriminated against it as a holder of federal obligations, the FDIC as receiver of The Connecticut Bank Trust Company, N.A. (CBT) challenges the state's practice under the CCBT of exempting interest income earned on certain state and local bonds from gross income, but including interest income earned on federal debt obligations in gross income. Because the plaintiff failed to raise this issue before the department of revenue services, the court lacks subject matter jurisdiction over this claim. The court does not lack subject matter jurisdiction over the remaining claim which was raised in the original appeal. In this claim, the plaintiff argues that the DRS failed to issue timely notice of the deficiency assessment under General Statutes §12-233. The court disagrees. Accordingly, the appeal is dismissed.
This appeal stems from two audits of CBT's 1983-1987 tax returns by the department of revenue services (DRS). Since 1979, Connecticut pursuant to the CCBT has required corporate taxpayers to include interest income received from federal, state and local bonds (in addition to other securities or obligations), as part of their gross income. General Statutes § 12-213 (a)(9). During this same period, however, interest income earned on certain Connecticut state and local bonds were exempt from taxation under the CCBT.[1]
Except where otherwise indicated, the parties have stipulated CT Page 6714 to the following facts. During these relevant years CBT was qualified to do business in Connecticut and was subject to the CCBT. CBT owned federal obligations during the pertinent tax years of 1983 through 1987, as demonstrated through CBT's tax returns for those years. In its corporate returns for the First Audit Period (tax years 1983-1985), CBT included in gross income interest earned from all federal government bonds, and deducted its interest expenses incurred in buying and holding such bonds. Subsequent to December 31, 1985, the commissioner audited CBT's 1983, 1984 and 1985 tax returns.
On or about August 30, 1988, the commissioner sent CBT audit workpapers showing proposed tax recalculations of $2,112,532 plus interest. Following an October 4, 1988 informal conference with the commissioner, CBT, November 16, 1988, received from the commissioner "Revised First Audit Workpapers" proposing tax recalculations of $2,175,329 plus interest thereon. The audit results were based on the commissioner's disallowance of the deduction taken for interest expenses related to the federal bonds.
CBT, on November 28, 1988, made a partial payment of $3,000,000 on the tax recalculation for the First Audit Period, made a claim for refund and preserved its rights to further protest and appeal any and all audit adjustments. On or about September 12, 1991, the commissioner sent the FDIC, as receiver for CBT, a determination letter.
Subsequent to December 31, 1987, the commissioner audited CBT's 1986 and 1987 CCBT returns (The Second Audit Period). Under cover of a letter dated November 28, 1988, CBT made a partial payment of $1,800,000 on the Second Audit Period tax recalculation. This payment was made under protest with a claim for refund and a preservation of CBT's right to further protest and appeal any tax adjustment. On June 1, 1990, the commissioner issued a billing notice of the assessment of $1,594,231 in tax plus interest thereon for the Second Audit Period.
CBT, on June 25, 1990, timely filed a request for a hearing and correction of the tax assessed pursuant to General Statutes § 12-236. On or about September 12, 1991, the commissioner sent the plaintiff a determination letter notifying CBT that its request for a correction was denied. The FDIC filed this appeal on October 16, 1991. Further facts are addressed in the decision as required. CT Page 6715
The plaintiff has established its interest as the receiver for CBT[2] and succeeded to all assets and liabilities of CBT by operation of law. See 12 U.S.C. § 1821.
The audit issue relates to the deductions taken from the plaintiff's gross income for CCBT purposes of interest expenses incurred in carrying its bonds. The commissioner determined that the plaintiff improperly took this deduction under the CCBT, and added such amounts to the plaintiff's gross income.
A challenge to the tax treatment of federally tax exempt municipal bonds and federally taxable bonds under General Statutes § 12-217 (a)(A), on equal protection grounds was rejected in D.A. Pincus Co. v. Meehan, 235 Conn. 865 (1996).[3]
In Pincus our Supreme Court noted the evolution of the problem in distinguishing between federal and state tax treatment of municiple bonds.
 [U]nder the federal tax provisions, a taxpayer does not include the interest earned on municipal bonds in income and does not deduct the interest paid on money borrowed to carry these bonds. The taxpayer, however, must include the interest earned on both municipal and corporate bonds and may deduct the interest expense incurred to carry those bonds.
In contrast, under Connecticut's corporate tax scheme, interest earned on . . . municipal . . . obligation(s) is included in the taxpayer's gross income. Furthermore, § 12-217 (a)(A) provides that, in general, only those items deductible under federal tax are deductible in Connecticut. Therefore, broker-dealers . . . who . . . trade . . . federally taxable obligations, such as corporate bonds, [and] who are also taxed in Connecticut on interest earned, receive a deduction for interest expenses incurred in connection with these obligations. On the other hand, broker-dealers . . . [and] who [trade] federally tax-exempt obligations . . . who are similarly taxed in Connecticut on interest earned, do not receive a deduction on interest expenses CT Page 6716 incurred in carrying these obligations.
D.A. Pincus v. Meehan, supra, 235 Conn. 871-72.
Thus, under the CCBT taxpayers dealing in federally tax exempt obligations were treated differently by Connecticut. Our Supreme Court determined however that this treatment did not violate the equal protection clauses of the state and federal constitutions. D.A. Pincus Co. v. Meehan, supra, 235 Conn. 865. The Pincus decision disposed of the claims brought in the FDIC's original appeal in favor of the state.
Following the Pincus decision, therefore, the plaintiff moved to amend its complaint on August 30, 1996.[4] Its motion was granted on October 7, 1996, and a second amended complaint was filed on November 4, 1996. The second amended complaint raised for the first time the FDIC's claim that the CCBT violates the borrowing and supremacy clauses of the U.S. Constitution, as well as 31 U.S.C. § 3124.
The basis of these claims is the different treatment of income from federal bonds and those state bonds which are exempt from the CCBT. See Plaintiff's Motion for Leave to File Second Amended Complaint August 30, 1996.[5] In the tax years at issue, the CCBT included in taxable income all interest income earned on federal obligations, but exempted interest income on certain State of Connecticut Bonds.[6] The plaintiff asserts that as a matter of federal constitutional[7] and statutory law,[8] the discriminatory tax treatment of holders of federal bonds is prohibited. See Memphis Bank Trust Co. v. Garner,459 U.S. 392, 398 (1983). ("A state tax that imposes a greater burden on holders of federal property then on holders of similar state property impermissibly discriminates against federal obligations.") The court cannot reach this issue because it lacks jurisdiction over the appeal.
CBT failed to file an amended tax return setting forth the constitutional and statutory claims it now raises in this case. The plaintiff's right to bring this action under General Statutes § 12-237 is predicated on the filing of a refund claim under General Statutes § 12-225. The claims at issue were not considered during the audit. The failure to raise these new claims before the DRS by amended return deprives the court of subject matter jurisdiction. CT Page 6717
This appeal is brought pursuant to § 12-237 which provides in pertinent part: "Any taxpayer aggrieved because of any . . . determination . . . of the [c]ommissioner . . . may . . . take an appeal therefrom to the Superior Court. . . . Said court may grant such relief as may be equitable."
The commissioner's final decision addressed the deductibility from income, for CCBT purposes, of interest expenses relating to the holding of federal bonds — i.e. the Pincus issue. In contrast, the issue now raised by the plaintiff questions the legality of including income from federal bonds in its gross income for purposes of the CCBT. The plaintiff never raised this issue before the commissioner by amended return pursuant to General Statutes § 12-225[9] or in any other fashion.
A similar situation was addressed by our Supreme Court inOwner Operators Independent Drivers Assn. of America v. State,209 Conn. 679 (1989), where the plaintiffs challenged General Statutes § 12-487 which required truck owners to pay an annual $10 tax for a fuel identification decal. The taxpayer failed to take advantage of an administrative statutory refund process.[11] Instead, the plaintiffs sought injunctive and declaratory relief from the tax which the commissioner conceded was unconstitutional.[12] This proved fatal to their constitutional challenge to the tax. The case was dismissed on grounds of sovereign immunity and failure to exhaust administrative remedies.
The court noted the important policy issues underlying its decision, issues especially relevant in this present case.
Today's decision comports with sound and often-recognized judicial policy. As a general matter, the doctrine of exhaustion of remedies fosters an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. Concerned Citizens of Sterling v. Sterling, [204 Conn. 551,] 557 [(1987)]; Connecticut Life Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352, 358-59 (1977); 4 K. Davis, CT Page 6718 Administrative Law (2d Ed. 1983) § 26:1, p. 41. In the particular case before us, given the state's ongoing fiscal responsibilities, claims for tax refunds impose a specially urgent obligation on litigants to proceed through statutorily prescribed channels. "Public policy requires . . . that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer. . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes." National CSS, Inc. v. Stamford, 195 Conn. 587, 597-98 (1985).
Owner-Operators Independent Drivers Assn. of America v. State, supra, 209 Conn. 691-692.
Owner-Operators also addresses the issue of the constitutional nature of the plaintiff's claim, and rejected an administrative bypass rule for such claims. Id., 688-689. "[D]irect judicial adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternate [statutory] procedure . . . which [the litigant] has chosen to ignore.Concerned Citizens v. Sterling, supra, [204 Conn. 551]; SchoolAdministrators Assn. v. Daw, 200 Conn. 376, 385 (1986); LaCroixv. Board of Education, 199 Conn. 70, 87 (1986) quoting Sullivanv. State, 189 Conn. 550, 554 (1983)." (Internal quotation marks omitted.) Owner-Operators Independent Drivers Assn. of America v.State, supra, 209 Conn. 687.
The plaintiff has brought this action pursuant to statute, § 12-237; however, it claims aggrievement from the commissioner's determination that it was not entitled to deduct interest expenses from its CCBT returns. The commissioner's determination was validated in Pincus v. Meehan, supra,235 Conn. 865. The plaintiff is not aggrieved by the commissioner's correct application of the law. The new issues raised in the second amended complaint concerning the discriminating tax treatment of income earned law. The new issues raised in the second amended complaint concerning the discriminating tax treatment of income earned from federal bonds were never presented to the commissioner. The plaintiff's new claims are precluded by both the principles of sovereign immunity and exhaustion of CT Page 6719 administrative remedies.
The state is immune from suit unless it consents to suit by appropriate legislation. Lamb v. Burns, 202 Conn. 158, 169
(1987). "[A]ny statutory waiver of immunity must be narrowly construed." Struckman v. Burns, 205 Conn. 542, 558 (1987). The waiver of sovereign immunity for tax refund claims relating to nontaxable income is conditioned on the filing of an amended return pursuant to § 12-225.
The refund procedure of § 12-225 also establishes an adequate administrative remedy which must be exhausted before the Superior Court will obtain jurisdiction over it. See ConcernedCitizens of Sterling v. Sterling, supra, 204 Conn. 556; Cummingsv. Tripp, 204 Conn. 67, 75 (1987).
The plaintiff argues that interlocutory rulings in this case, which allowed the amendment to the complaint and denied summary judgment or dismissal on this issue, prevent this court from considering the commissioner's jurisdictional defenses of sovereign immunity and failure to exhaust administrative remedies. Two previous rulings in this case involved the issues of sovereign immunity and exhaustion of administrative remedies: (1) the order of October 7, 1996, allowing the FOIC to amend its complaint to add the new discrimination claims, and (2) the order of September 5, 1997, denying the defendant's motion for summary judgment for lack of subject matter jurisdiction.
In support of this "law of the case" claim, the plaintiff cites Breen v. Phelps, 186 Conn. 86 (1982). Breen did not apply the "law of the case" to prevent another judge's reconsideration of legal claims. In allowing summary judgment to be entered by a judge after a denial of a motion to strike on the same issue by another jurist the court noted:
"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." Santoro v. Kleinberger, 115 Conn. 631, 638 (1932). This principle has been frequently applied to an earlier ruling during the pleading stage of a case such as that upon the motion to strike before us. See State v. Sul, 146 Conn. 78, 83 (1958); CT Page 6720 Albrecht v. Rubinstein, 135 Conn. 243 (1948); Dawson v. Orange, 78 Conn. 96, 129 (1905). It has also been followed in other contexts. See Christiano v. Christiano, 131 Conn. 589, 596
(1945); Santoro v. Kleinberger, supra [115 Conn. 631]. "According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." 46 Am. Jur.2d, Judges § 46; annot., 132 A.L.R. 14, 49.
 The law of the case is not written in stone but is a flexible principle of many facets abatable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller 
Cooper, Federal Practice and Procedure: Jurisdiction § 4478.
Breen v. Phelps, 186 Conn. 86, 98-99 (1982). Also, see CFM ofConnecticut, Inc. v. Chowdhury, 239 Conn. 375, 403 (1996) ("a decision of one trial judge that declares the law of the case is not a limitation on the power of the second judge in the case to decide otherwise. . . .")
The defendant's argument implicates the authority of this court to decide the remaining issues of this appeal. Subject matter jurisdiction cannot be waived. Lewis v. Gaming PolicyBoard, 224 Conn. 693, 698 (1993). The court's obligation to revisit the defendant's jurisdictional claim "tempers the application of the doctrine of the law of the case." Lewis v. Gaming Policy Board, supra, 224 Conn. 699.
The court lacks jurisdiction over the issues raised for the first time in the second amended appeal.
One issue raised in the FDIC's original appeal remains, however. The FDIC argues that the commissioner's assessment of additional taxes to the First Audit Period was invalid because proper notification was not sent to CBT within the three year statute of limitations period set forth in § 12-233.[13] The court disagrees and finds the commissioner has proven by a preponderance of the evidence that notice was timely made.
Pursuant to § 12-233, the commissioner is directed to CT Page 6721 "notify the taxpayer" of "any error disclosed by [the commissioner's] examination" of the tax returns. No specific form or method of notice is enunciated.
The FDIC argues that only one particular form of notice (an F-30 Notice) can satisfy the requirements of § 12-233. Section 12-233-1(a) of the Regulations of Connecticut State Agencies provides:
 An error is not disclosed by an examination of an annual return until such examination is completed and approved by the commissioner or his authorized agent. The mailing or delivery of Notice FA-30 shall constitute notice by the commissioner that an error has been disclosed. Such disclosure of error shall be deemed to have occurred thirty days before the Notice FA-30 statement date.
While § 12-233-1 states that issuing the FA-30 form is sufficient notice of a "disclosed error," the regulation by no means excludes other types of notice. Section 12-233-1, for example, does not tie the date of notice to the date of the F-30 Form. In contrast § 12-236-1(b) of the Regulations of Connecticut State Agencies specifically ties the tolling of the time period for requesting a hearing on the date of the F-30 Form.
The question remains: was CBT timely notified of the "disclosed error?" The answer is yes.
The parties agree that pursuant to § 12-333, the commissioner's right to assess additional CCBT with respect to the First Audit Period expired no later than November 1, 1989. The plaintiff claims notice was not sent until June 1, 1990, when a OAR-140 Billing Notice with a Notice FA-30 were issued by the DRS. .(Pl. Exh. G.) The defendant argues that two sufficient notices were issued prior to November 1, 1989. The court agrees with the defendant.
The commissioner demonstrated at the December 16, 1997 evidentiary hearing that the DRS generated a timely billing notice that was sent to CBT. This is evidenced by computer records and supporting testimony. (Def. Exh. 1, 2, 3, and 5; Testimony of Mehmel and King.) Specifically, the commissioner established that a bill reflecting the audit results was sent to CT Page 6722 the plaintiff on December 1, 1988. (Def. Exh. 2.) "Because computer records are part of the ordinary business activities, created for business rather than for litigation purposes, they carry with them the assurance of regularity that is a large element in establishing their trustworthiness." (Citation omitted.) American Oil Co. v. Valenti, 179 Conn. 349, 357 (1979). The court finds that a § 12-233 notice was sent to CBT by the DRS on December 1, 1988. This notice was timely and satisfied the requirements of § 12-233.
Alternatively, CBT was notified of an "error disclosed," pursuant to § 12-233, on November 16, 1988. The workpapers from the First Audit Period were received by CBT on or about August 30, 1988. (Stip. ¶ 17.) CBT received the "Revised First Audit Workpapers" on or about November 16, 1988. The letter from the commissioner dated November 16, 1988, and attached to the revised workpapers stated in pertinent part:
 This letter is to advise you of the determination regarding the above audit of Connecticut combined corporation business tax returns as a result of the informal conference held on October 4, 1988, and the review of the contents of your letter of November 7, 1988. The determination is as follows:
 The addback of federally tax exempt interest income to arrive at Connecticut net income to be taxed will be prepared as was proposed by the examiner. There is nothing contained in our statutes which would permit a deduction for accretion of market discounts.
(Def. Exh. 10.) This statement refers to the Pincus issue contested by CBT and the FDIC before the commissioner, and before this court.[14]
Additionally, the parties stipulated that the amount of the DRS' tax recalculation for the First Audit Period was set forth in the revised workpapers attached to the November 16, 1988 letter: $2,175,329. Thus, the November 16 letter provided CBT with notice of the reason for and the amount of the assessment of additional taxes.
Moreover, § 12-233 requires that "[w]ithin thirty days of the mailing of such notice, the taxpayer shall pay to the commissioner . . . any additional amount of tax shown to be CT Page 6723 due by the corrected return." Notably, CBT made its $3,000,000 payment[15] on November 28, 1988, twelve days after the November 16 letter. This falls within the timeframe set forth in § 12-233. Although the payment of $3,000,000 does not constitute waiver of the statutory right to notice, it indicates CBT was notified of the assessment of additional taxes, i.e. the "error disclosed by . . . examination," through the November 16 letter.
CBT was timely notified of the assessment and, therefore, the plaintiff's claim fails.
The appeal is dismissed.
McWeeny, J.