OWNER-OPERATORS INDEPENDENT DRIVERS ASSOCIATION OF AMERICA ET AL. *v.* STATE OF CONNECTICUT ET AL.
(13459)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 6, 1988—decision released January 31, 1989

*Jeffrey W. King,* with whom were *K. Michael O'Connell, Stacey L. Savin* and, on the brief, *Daniel J. Harrold,* for the appellants (plaintiffs).

*Jane D. Comerford,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellees (defendants).

PETERS, C. J. The dispositive issue in this appeal is whether the plaintiffs may, by an independent Superior Court action, recover taxes they have paid pursuant to an unconstitutional statute, or whether they were obliged first to pursue statutorily provided administrative remedies. The plaintiffs, Owner-Operators Independent Drivers Association of America (OOIDA), W. H. Christie & Sons, Inc., and Mark Dennis, doing business as M & J Expeditors, brought suit in Superior Court challenging the constitutionality of General Statutes § 12-487,[1] demanding declaratory and injunc-

---

[1] "[General Statutes (Rev. to 1987)] Sec. 12-487. REGISTRATION OF VEHICLES FOR PURPOSES OF THE MOTOR CARRIER ROAD TAX AND THE ADDITIONAL REGISTRATION REQUIRED FOR PURPOSES OF PURCHASING DIESEL FUEL WITH RESPECT TO WHICH STATE TAX HAS NOT BEEN PAID. (a) On and after July 1, 1981, the commissioner of revenue services shall provide by regulation for the registration, for a fee of ten dollars, of each vehicle operated by a motor carrier, which registration shall be renewable annually, except that the fee

tive relief and also refunds from taxes paid pursuant to the statute. The defendants, the state of Connecticut, the commissioner of revenue services and the state treasurer, moved to dismiss the action. The trial court granted the motion to dismiss, holding that sovereign immunity barred the suit. The plaintiffs appealed to the Appellate Court and we transferred the case here pursuant to Practice Book § 4023. We find no error.

applicable with respect to any motor bus operating under a permit issued pursuant to section 13b-89 shall be five dollars for each such registration or renewal thereof. In addition, the fee applicable with respect to any such registration for a vehicle operated by a motor carrier, exclusive of any such motor bus, issued prior to July 1, 1981, for use in the calendar year 1981 shall be ten dollars and said commissioner is authorized to collect the difference between said fee in the amount of ten dollars and the fee for each such registration issued for use in the calendar year 1981 as required under the provisions of this section immediately prior to March 27, 1981. On the initial registration of any such vehicle, said commissioner shall provide an identification marker for such vehicle to be affixed thereto in a readily visible spot. Such marker shall remain the property of the state and may be recalled for any violation of the provisions of this chapter or of the regulations promulgated hereunder. No person shall operate or cause to be operated any such vehicle in this state unless such vehicle bears the identification marker required by this section, provided vehicles bearing valid number plates issued by this state shall be exempt from the provisions of this section and provided the commissioner by letter or telegram may authorize the operation, for a period not to exceed ten days as to any one motor carrier, of a vehicle or vehicles without such identification marker when the enforcement of this section would cause undue delay and hardship in the operation of such vehicle or vehicles.

"(b) Any motor carrier registered in accordance with subsection (a) of this section, may, on forms prepared for such purpose by said commissioner, apply for an additional registration in accordance with this subsection, subject to payment of a fee in addition to that payable with respect to registration under said subsection (a), in the amount of fifteen dollars for such additional registration of each vehicle operated by such motor carrier. Such registration shall be renewable annually subject to payment of a fee of fifteen dollars. Registration as prescribed in this subsection shall be required for any motor carrier, or any vehicle operated by such motor carrier, to purchase from any holder of a permit issued under the provisions of section 12-480a, motor fuel with respect to which motor fuel tax has not been paid as prescribed in section 12-458. Upon the initial registration of any such vehicle in accordance with this subsection, said commissioner shall provide an identification marker related to registration for purposes of this

For the purposes of this appeal, the relevant facts are undisputed. The named plaintiff is an association made up of members who own and operate, or represent persons who own and operate, trucks in interstate commerce, at times in and through Connecticut. Other plaintiffs are W. H. Christie & Sons, Inc., a certified motor common carrier of property, and Mark E. Dennis, an unincorporated motor carrier.[2] No plaintiff's principal place of business is in Connecticut, nor has any plaintiff registered his vehicle in Connecticut.

General Statutes § 12-487 required[3] all truck owners whose trucks are not registered in Connecticut to pay an annual $10 tax for a fuel identification decal. The statute prohibited the operation in this state of any such truck not bearing the decal. Trucks registered in Connecticut need not display the decal, nor need their owners pay the tax. The plaintiffs have paid the tax for varying numbers of years.

subsection, which marker shall be clearly distinguishable from the marker provided in accordance with said subsection (a) and which shall be affixed to such vehicle so as to be readily visible and, to the extent possible, in the proximity of the marker provided for purposes of said subsection (a), or in the discretion of said commissioner a single marker may be used for the purposes of subsections (a) and (b) of this section if such combination provides the identification necessary with respect to each of said subsections. Such marker shall remain the property of the state and may be recalled for any violation of this chapter or any regulations promulgated in accordance therewith."

[2] This case comes to us on a motion to dismiss. Because the parties have not yet litigated the merits of whether this case should become a class action or whether OOIDA is a proper representative of the plaintiffs, and because an individual and a corporation appear in the complaint, we need not reach the standing issues raised in the briefs.

The plaintiffs voice the concern that the commissioner would not have had the power to declare this action a class action. Concededly, only a court may certify a class action. Practice Book § 88. This issue is, however, one of many that the plaintiffs could have pursued in a trial de novo on appeal to the Superior Court pursuant to General Statutes § 12-489 (b). See *Albert Bros., Inc.* v. *Waterbury*, 195 Conn. 48, 52, 485 A.2d 1289 (1985).

[3] By Public Acts 1988, No. 88-249, the legislature has amended General Statutes § 12-487.

On April 20, 1987, the plaintiffs sent to the commissioner a letter objecting to the fact that § 12-487 required payment of the $10 decal tax by out-of-state, and not by in-state, truck owners. Stating that they intended to sue the state for declaratory and injunctive relief and for refunds, the plaintiffs enclosed with their letter a copy of the complaint they proposed to file in the Superior Court. Their letter further expressed their doubt that the commissioner could provide them the relief they sought, but invited him to authorize refunds for the plaintiffs W. H. Christie & Sons, Inc., and Dennis if he believed himself empowered to do so. The commissioner never responded to this letter.

As their letter had indicated, on May 12, 1987, the plaintiffs initiated a Superior Court action claiming that § 12-487 violated the Commerce Clause; U.S. Const., art. I, § 8, cl. 3; and the Privileges and Immunities Clause; U.S. Const., art. IV, § 2, cl. 1; and that the defendants' actions violated 42 U.S.C. § 1983. The plaintiffs sought declaratory and injunctive relief, refunds of all the decal taxes paid by the plaintiffs, and attorney's fees. On June 9, 1987, the defendants moved to dismiss the action and on June 30, 1987, the trial court heard arguments on the matter.

Before the trial court had completed its deliberations on the motion, however, it received a letter from the defendants, dated October 5, 1987, notifying it that, in light of the recent decision of the United States Supreme Court in *American Trucking Assns., Inc.* v. *Scheiner*, 483 U.S. 266, 107 S. Ct. 2829, 97 L. Ed. 2d 226 (1987), the attorney general had advised that continued collection of the decal tax would violate the Commerce Clause. Accordingly, the defendants informed the court that they would stop collecting the tax as of October 1, 1987.

On January 21, 1988, the trial court granted the defendants' motion to dismiss. The trial court held that sovereign immunity barred both the action for refunds of unconstitutionally collected taxes and the § 1983 action. It therefore concluded that it did not have subject matter jurisdiction over the plaintiffs' monetary claims. The trial court considered the injunction action withdrawn, and therefore moot.[4] From the trial court's judgment, the plaintiffs brought this appeal.

On appeal, the plaintiffs offer a tripartite argument. They maintain that: (1) sovereign immunity does not bar their refund claims, because the state has waived its immunity; (2) their claims are presently justiciable because such claims, as a matter of law, do not require the exhaustion of administrative remedies; and (3) in the alternative, if administrative remedies were applicable, they have, as a matter of fact, exhausted them. Because in our view the state's limited waiver of its sovereign immunity is inextricably linked to the exhaustion of administrative remedies, we disagree with the plaintiffs' claims of law. We are equally unpersuaded of the merits of the plaintiffs' factual claim. Accordingly, we find no error.

It is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit. *Lamb* v. *Burns,* 202

---

[4] We agree with the trial court that the plaintiffs' claims for injunctive relief, asking the court to declare the statute unconstitutional and to enjoin the defendants from collecting the tax, are now moot. See *Connecticut State Employees Assn.* v. *AFSCME,* 188 Conn. 196, 199–200, 448 A.2d 1341 (1982); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 252, 440 A.2d 310 (1982). Plaintiffs' counsel admitted as much before this court. The state has conceded that the statute is unconstitutional and informed the trial court that it would no longer collect the tax. Furthermore, the legislature has amended the statute to cure the constitutional flaw the United States Supreme Court held to be present in a similar statute. Public Acts 1988, No. 88-249. Thus, the statute's constitutionality is not before us.

Conn. 158, 169, 520 A.2d 190 (1987); *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 45 (1983). " 'The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed "by the use of express terms or by force of a necessary implication." ' " *Struckman* v. *Burns,* 205 Conn. 542, 558, 534 A.2d 888 (1987), quoting *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives,* 151 Conn. 259, 262–63, 196 A.2d 596 (1963). Because such statutes are in derogation of the common law, however, "[a]ny statutory waiver of immunity must be narrowly construed"; *Struckman* v. *Burns,* supra; and its scope must be confined strictly to the extent the statute provides. *Berger, Lehman Associates, Inc.* v. *State,* 178 Conn. 352, 356, 422 A.2d 268 (1979); see generally comment, "Sovereign Immunity in Connecticut: Survey and Economic Analysis," 13 Conn. L. Rev. 293, 295–301 (1981).

The statute on which the plaintiffs rely for their argument that sovereign immunity has been waived is General Statutes § 12-480 (c).[5] That statute does indeed specifically waive immunity from refund claims in cases in which motor carriers dispute the legality of the decal tax mandated by § 12-487. The provision of General Statutes § 12-489 (b),[6] which we have construed to

[5] General Statutes § 12-480 (c) provides: "Any motor carrier who has registered any vehicle and paid a fee pursuant to section 12-487, and who claims that such registration or payment is illegal for any reason, may claim a refund or credit, in writing, within six months after such registration or payment. The commissioner shall notify such motor carrier of his action on the claim for a refund or credit within sixty days of the filing of such claim. If, upon examination of such claim, the commissioner determines that such registration or payment was illegal, the treasurer, upon order of the comptroller, shall refund or credit the amount of any such fee to such motor carrier."

[6] General Statutes § 12-489 (b) provides: "Any motor carrier aggrieved because of any order, decision, determination or disallowance of the commissioner made under this chapter may, within one month after service of notice of such order, decision, determination or disallowance, take an

authorize de novo Superior Court review of denials of these claims further supports such a waiver. The statutory waiver contained in § 12-480 is not, however, unconditional. On the contrary, the legislature has enacted a limited waiver of immunity expressly conditioned on pursuit of a prescribed administrative remedy. The very section that authorizes a refund claim against the state itself designates the commissioner of revenue services as the person to adjudicate any timely claim, in writing, that payment of a fee "pursuant to Section 12-487 . . . is illegal for any reason . . . ." General Statutes § 12-480 (c). The same section requires the commissioner, within sixty days of the filing of a proper claim, to notify the claimant of his decision. It is the administrative denial of a claim for a refund that triggers a claimant's right to pursue de novo proceedings in the Superior Court.

On its face, § 12-480 (c) establishes an administrative request for a refund as the prescribed avenue of relief that the plaintiffs were required to follow in order to take advantage of the state's limited waiver of its sovereign immunity. "We have frequently held that

---

appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond of recognizance to the state of Connecticut, with surety, to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if any tax or fee has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum to the aggrieved motor carrier. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." *Norwich* v. *Lebanon,* 200 Conn. 697, 708, 513 A.2d 77 (1986) When an adequate administrative remedy exists at law, a litigant must exhaust it before the Superior Court will obtain jurisdiction over an independent action on the matter. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987); *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 1230 (1987); see also *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979).

This doctrine "is subject to a few limited exceptions, one being that a party may bring an independent action to test certain constitutional issues without first having resorted" to the provided administrative remedy. *Butzgy* v. *Glastonbury,* 203 Conn. 109, 121, 523 A.2d 1258 (1987); see also *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979). Nonetheless, "direct judicial adjudication even of constitutional claims is not warranted when the relief sought by a litigant 'might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore.' " *Concerned Citizens of Sterling* v. *Sterling,* supra, 562; *School Administrators Assn.* v. *Dow,* 200 Conn. 376, 385, 511 A.2d 1012 (1986); *LaCroix* v. *Board of Education,* 199 Conn. 70, 87, 505 A.2d 1233 (1986), quoting *Sullivan* v. *State,* 189 Conn. 550, 554, 457 A.2d 304 (1983).

The plaintiffs offer two responses to these general principles. On the one hand, they maintain that their claim of unconstitutionality could not have been adjudicated administratively, and hence that exhaustion of their administrative remedies should be excused

because it would have been futile. On the other hand, they maintain that their letter of April 20, 1987, to the commissioner of revenue services, to which he failed to respond, was a sufficient attempt to exhaust their administrative remedies.

The plaintiffs principally contend that they need not have pursued the administrative remedy because in their initial complaint, before the defendants conceded the statute's unconstitutionality and stopped enforcing it, their claim was that § 12-487 was unconstitutional, a claim that the commissioner would have had no power to resolve in their favor. They maintain that the essentially constitutional nature of their lawsuit has not been altered by the state's subsequent acknowledgement of the statute's unconstitutionality. According to the plaintiffs, the commissioner could not have decided that, as a constitutional matter, they must receive refunds, and therefore they were relieved of having to pursue their administrative remedy. We disagree.

In this case, as in *Sullivan* v. *State,* supra, the commissioner "might conceivably" have recognized some applicable illegality with regard to the statute which, even without a declaration of the statute's unconstitutionality, would have led to an award of a refund. Had the commissioner denied such a refund, the plaintiffs could then have pursued an appeal, as provided by § 12-489 (b), in which all their statutory and constitutional claims could have been heard in de novo Superior Court proceedings. We reject the plaintiffs' argument that because their action challenged the constitutionality of § 12-487, they could bypass the prescribed administrative remedy provided and proceed directly to the Superior Court for relief.

In such circumstances, we held in *Sullivan* v. *State,* supra, that recourse to available administrative proce-

dures is mandatory. There, the plaintiff sought damages for the death of her decedent, a state employee, killed in the course of his employment. The defendant, state of Connecticut, pleaded the special defense that General Statutes § 4-165 granted the state immunity from such a suit. The plaintiff claimed that § 4-165 deprived her of a legal cause of action to redress her injuries, thus violating her state constitutional rights. Id., 551–52. Section 4-165 continues, however, providing that "[a]ny person having a complaint for such . . . injury shall present it" to the state claims commissioner. See *McKinley* v. *Musshorn,* 185 Conn. 616, 621, 441 A.2d 600 (1981). Given this statutory directive, and despite the plaintiff's constitutional claim, we held that the plaintiff should have petitioned the claims commissioner, who would have had the power to make an award to the plaintiff pursuant to General Statutes §§ 4-158, 4-159 and 4-160 (a). *Sullivan* v. *State,* supra, 556–57. "If her claim had been rejected by the commissioner . . . the plaintiff would then have been free to bring her constitutional claim to the Superior Court. . . . [W]e cannot assume that recourse to that procedure would necessarily have been futile or inadequate." Id., 559.

Subsequent to *Sullivan* v. *State,* we held in *Doe* v. *Heintz,* 204 Conn. 17, 35–36, 526 A.2d 1318 (1987), that General Statutes § 4-160, which establishes the powers of the claims commissioner, "expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize," and thus indicates "the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions." In *Doe,* we concluded that, because the plaintiffs had not exhausted the administrative remedy available to them, the state's defense of sovereign immunity defeated even the plaintiffs' constitutional claims. Id., 33–34.

The plaintiffs in this case are confronted by a statute no less compelling than that in *Sullivan* and *Doe.* Under § 12-480 (c), "[a]ny motor carrier who has . . . paid a fee pursuant to section 12-487, and who claims that such . . . payment is illegal *for any reason,* may claim a refund or credit" from the commissioner who "shall notify such motor carrier of his action . . . ." (Emphasis added.) The commissioner of revenue services in this case, like the claims commissioner in *Sullivan* and *Doe,* could have decided that the plaintiffs should receive refunds. If he decided otherwise, the plaintiffs "would then have been free to bring [their] constitutional claim[s] to the Superior Court." *Sullivan v. State,* supra, 559.[7] " '[B]ecause exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider [the] constitutional claim' . . . we conclude that the trial court lacked jurisdiction and, therefore, properly granted the motion to dismiss."[8] *Barde* v. *Board of Trustees,* 207 Conn. 59, 66, 539 A.2d 1000 (1988), quoting *Doe* v. *Heintz,* supra, 34.[9]

---

[7] Our holding is no different for the plaintiffs' claim that the defendants' actions violated 42 U.S.C. § 1983. The plaintiffs should have brought that claim also before the commissioner, and if rejected, could have pursued the theory in the Superior Court. See *Zizka* v. *Water Pollution Control Authority,* 195 Conn. 682, 690, 490 A.2d 509 (1985).

[8] We need not decide whether the plaintiffs have a common law or a constitutional right to refunds, as they contend. Rather, because the plaintiffs did not pursue the administrative remedy specifically mandated by the state, the plaintiffs left themselves open to the sovereign immunity defense, which deprived the trial court of personal jurisdiction over the sovereign.

[9] While we have stated in the past that "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts"; *Sentner* v. *Board of Trustees,* 184 Conn. 339, 343, 439 A.2d 1033 (1981); we have never held that the state cannot prescribe the avenues claimants must pursue in seeking redress. Indeed by enacting General Statutes § 12-480 (c), the state had already "relax[ed] its bar" against such suits. Thus, the plaintiffs' reliance on *Sentner* v. *Board of Trustees,* supra, and *Horak* v. *State,* 171 Conn. 257, 368 A.2d 155 (1976), is misplaced, as those cases concerned alleged unconstitutional acts for which the state had not provided an adequate statutory procedure to assure just compensation.

The plaintiffs' final argument is that they exhausted their administrative remedies by the letter they sent to the commissioner on April 20, 1987, to which he failed to respond. In evaluating this argument, we note that the plaintiffs filed their complaint in Superior Court on May 12, 1987, only twenty-two days after the letter to the commissioner. Since the plaintiffs' letter had warned the commissioner that such a lawsuit was imminent, it is understandable that the letter did not elicit an immediate administrative response. Even if, despite its ambiguity, the letter should have been construed as a request for administrative action on a "claim for a refund or credit" under the statute, the plaintiffs did not wait the prescribed sixty day period for the commissioner's response before initiating their independent Superior Court action.

In these circumstances, we are unpersuaded that the plaintiffs were entitled to treat the commissioner's inaction as the equivalent of a denial of their refund claim. On the day they invoked the jurisdiction of the Superior Court, the commissioner's time to act had not yet expired. Thereafter, the commissioner might reasonably have understood their court action as superseding their request for administrative relief, because, as of May 12, he became a defendant in their lawsuit. Exhaustion of administrative remedies would have required the plaintiffs at least to await the statutory sixty day period. Only then would they have been in a position to establish the temporal and substantive prerequisites for an appeal to the Superior Court as provided in § 12-489 (b).[10]

Today's decision comports with sound and often-recognized judicial policy. As a general matter, the doc-

[10] The plaintiffs cannot contend that their Superior Court action constitutes an appeal from the commissioner's denial of their claims. Their complaint represents that the Superior Court has jurisdiction pursuant to General Statutes § 51-164s, not General Statutes § 12-489 (b).

trine of exhaustion of remedies fosters an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. *Concerned Citizens of Sterling* v. *Sterling,* supra, 557; *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); 4 K. Davis, Administrative Law (2d Ed. 1983) § 26:1, p. 415. In the particular case before us, given the state's ongoing fiscal responsibilities, claims for tax refunds impose a specially urgent obligation on litigants to proceed through statutorily prescribed channels. "Public policy requires . . . that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer. . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes." *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597–98, 489 A.2d 1034 (1985).

There is no error.

In this opinion the other justices concurred.