[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO CERTIFY AS A CLASS (DOCKET ENTRY NO. 101)
Before the court is the plaintiffs' motion seeking class certification. The plaintiffs, James Caserta individually, James Caserta DDS IRA and James Caserta on behalf of First Trust Corporation,[1] bring this nine count amended complaint against the defendants, Robert Parker, Investmark Capital, Inc. (Investmark Capital), Fairfield Resources Management, Inc. (Fairfield Resources), Rock Acquisition Limited Partnership (Rock Acquisition) and Fairfield Income Business Partners Limited Partnership (Fairfield Income Business Partners). In his complaint, Caserta alleges vexatious litigation (counts one and two), abuse of process (count three), negligent infliction of emotional distress (count four), conversion of partnership assets (count five), breach of fiduciary duty (count six), breach of contract (count seven), civil conspiracy (count eight) and violations of CUTPA (count nine). Caserta now moves for certification as the authorized representative of a class known as "The Limited Partners of Fairfield Income Business Partners Limited Partnership and Rock Acquisition Limited Partnership"[2] for purposes of prosecuting counts five through nine.
Caserta alleges the following facts. Parker is a principal of Investmark Capital and/or Fairfield Resources, corporations that act as general partner(s) of Rock Acquisition and/or Fairfield Income Business Partners. Caserta is the owner and manager of an account known as James Caserta DDS IRA. Caserta placed funds in the account under the guidance of Parker, and is the account's sole beneficiary. First Trust Corporation (First Trust) is the legal custodian of the account.
During or after 1984, in response to Parker's solicitations, Caserta directed First Trust to purchase a limited partnership interest in Rock Acquisition and/or Fairfield Income Business CT Page 2894 Partners for $50,000. There are 129 limited partners in the partnership(s). All correspondence from the partnership(s) is addressed and mailed by Parker directly to Caserta as "James Caserta DDS IRA." All tax returns are sent directly to Caserta and all gains or losses in the IRA are taxed to Caserta. First Trust has delegated its right to sue in the present matter to Caserta and, in his amended complaint, Caserta added "James Caserta on behalf of First Trust Corporation" as a plaintiff in this action.
After becoming a limited partner, Caserta questioned and sought to investigate numerous partnership expenditures made by Parker and Investmark Capital and/or Fairfield Resources. In 1997, Parker instituted a civil action against Caserta. In 1998, the court granted Caserta's motion to strike the complaint for failure to state a cause of action. Thereafter, Caserta filed the present complaint against Parker alleging that, in exercising his duties as general partner, Parker mismanaged and continues to mismanage the partnership(s) to the detriment of the limited partners and for his own personal benefit and that of his corporations; has failed to disclose the true status of his interest in the partnership(s); has failed to disclose funds removed by him or his corporations from the limited partnership(s) for his personal use and enjoyment; has failed to properly and fully account for the activities, income and expenses of the limited partnership(s) has failed to disclose the adverse results of lawsuits or misrepresented their status; has failed to pay profits to the limited partners; and has sold the limited partners an interest in water which they already had a right to receive free of additional payment. The complaint seeks damages and temporary and permanent injunctive relief.
 A Standing
Parker argues that Caserta, both individually and as a beneficiary of First Trust, lacks standing to bring a class certification action because First Trust, not Caserta, was the entity that invested in the limited partnership(s). Parker argues that the only proper plaintiff is "First Trust Corporation for the benefit of James Caserta, DDA IRA," and that Caserta may not use the procedural device of a class action to bootstrap himself into the standing he lacks. CT Page 2895
Caserta replies that he has standing to sue because Parker's actions benefit or injure him directly, as James Caserta DDS IRA, and indirectly, as James Caserta. Caserta also argues that First Trust assigned him its right to sue in this matter and that, after amending his complaint to add "James Caserta on behalf of First Trust Corporation" as a plaintiff, the issue of standing became moot.
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) NationwideMutual Ins. Co. v. Pasion, 219 Conn. 764, 768, 594 A.2d 468
(1991). "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) Gillv. Diorio, 51 Conn. App. 140, 145, 720 A.2d 526 (1998). Aggrievement requires a showing that the party has "a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest . . . [and] that the specific personal and legal interest has been specially and injuriously affected by the decision. . . ." (Internal quotation marks omitted.) Light Rigging Co. v. Department ofPublic Utility Control, 219 Conn. 168, 173, 592 A.2d 386 (1991).
General Statutes § 52-106 provides: "An executor, administrator, or trustee of an express trust may sue or be sued without joining the persons represented by him and beneficially interested in the action." Consequently, the right of a beneficiary to bring an action at law or equity on its own behalf is limited. See §§ 281 and 282, 2 Restatement (Second), Trusts Trustees, pp. 42, 44 (1959). For example, "[w]here the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the trust property free of trust, the beneficiary cannot maintain an action at law against the third person, except . . . [i]f the beneficiary is in possession of the subject matter of the trust . . . ." 2 Restatement (Second), supra, § 281, p. 42. Similarly, "the beneficiary cannot maintain a suit in equity against the third person, except . . . [i]f the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person. . . . If the trustee cannot be subjected to the CT Page 2896 jurisdiction of the court or if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such a suit is necessary to protect the interest of the beneficiary." 2 Restatement (Second), supra, § 282, p. 44. Accordingly, "in the usual case [the beneficiary] cannot sue a third person to recover possession of the trust property for himself or the trustee, or for damages for conversion of or injury to the trust property, or for the recovery of its income, or to compel an agent of the trustee to account, or to enjoin a threatened injury to trust property by a third person." Bogart, Trusts and Trustees (2d Ed. Rev. 1980) § 869, p. 116-17.
A trustee may nonetheless delegate it's powers to others in certain circumstances. See Bogart, supra, § 555, p. 108-33. "The question may be settled . . . by an express clause in the trust instrument granting to the trustee authority to delegate a particular power and prescribing the conditions for delegation." Id., 109. "Since the rule against delegation is created by equity solely for the benefit of the beneficiary, it would seem clear that the beneficiary has the power to consent in advance to delegation, or approve delegation after it has been wrongfully attempted . . . ." Id., 124. However, a trustee who delegates its powers remains liable to the beneficiary, to whom it owes a duty of reasonable care. See id., § 557, p. 155-58.
In the present case, the court finds that Caserta meets all of the requirements for standing. First, Caserta satisfies the two-part test for aggrievement because, in alleging that Parker has mismanaged the partnership(s), Caserta also alleges a specific personal and legal interest in the action as well as direct financial injury in the form of lost profits and risk to the value of his $50,000 investment. See Light Rigging Co. v.Department of Public Utility Control, supra, 219 Conn. 173. Second, the existing law on trustee powers strongly supports the proposition that a trustee may assign its right to sue to a beneficiary. See Bogart, supra, § 555, p. 108-24. Trustees already delegate certain powers to accountants, attorneys and brokers in managing trust affairs. See id., 111-13. Furthermore, where, as here, the trustee's right to sue is delegated not to an agent or employee, but directly to a competent beneficiary, its underlying duty of care to the beneficiary is automatically fulfilled. See id., § 557, 155-58. In this case, the original trust instrument contained an express provision giving First Trust the ability to delegate any of its duties to any person or entity. (See Delegation Agreement, ¶ 2.) Moreover, the assignment was CT Page 2897 subsequently accomplished by means of a written agreement between First Trust and Caserta. (See Delegation Agreement, ¶ 4.) Thereafter, Caserta filed an amended complaint adding "James Caserta on behalf of First Trust Corporation" as a plaintiff, and a new allegation that First Trust had delegated its right to sue to James Caserta as the representative of First Trust. (See Amended Complaint, ¶ 1.) Practice Book § 10-60 provides in relevant part: "[A] party may amend his or her pleadings . . . at any time . . . [b]y filing a request for leave to file such amendment, with the amendment appended. . . . If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefore, shall, after service upon each party . . ., be filed with the clerk within the time specified above and placed upon the next short calendar list." Here, Parker did not object to the amended complaint within fifteen days from the date of filing. Therefore, the amendment is effective.
Parker argues that even if a trustee is permitted to delegate its right to sue to a beneficiary, it must do so prior to the filing of a complaint. He also argues that an evidentiary hearing is necessary before the court may resolve the issue of assignment. However, Parker provides no legal authority to support these propositions and the court is aware of none. Accordingly, the court finds that "James Caserta on behalf of First Trust Corporation" has standing to bring this complaint, and it is not necessary to consider whether the plaintiffs James Caserta individually or James Caserta DDS IRA also have standing.
 B Class Certification
Certification of class actions is governed in the first instance by the requirements of Practice Book § 9-7, which provide: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of CT Page 2898 the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." All four requirements must be met in order to certify a class. See Arduini v. Automobile Ins. Co. of Hartford,Connecticut, 23 Conn. App. 585, 588, 583 A.2d 152 (1990). If the four requirements are met, then the court must consider Practice Book § 9-8, which provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." See also Arduini v.Automobile Ins. Co. of Hartford, Connecticut, supra,23 Conn. App. 589. "The plaintiffs bear the burden of establishing that all requirements of these Practice Book Sections are met . . . ."Ward v. New Haven, Superior Court, judicial district of New Haven-Housing Session, Docket No. 083948 (December 4, 1990,Vertefeuille, J.) (3 Conn. L. Rptr. 71, 72).
"[O]nly a court may certify a class action." Owner-operatorsIndependent Drivers Assn. of America v. State, 209 Conn. 679, 682
n. 2, 553 A.2d 1104 (1989). A court "has broad discretion in determining whether a suit should proceed as a class action."Arduini v. Automobile Ins. Co. of Hartford, Connecticut, supra,23 Conn. App. 589-90. "[T]he requirements of the rule are to be given a liberal construction." Campbell v. New Milford Board ofEducation, 36 Conn. Sup. 357, 360, 423 A.2d 900 (1980).
Since the requirements for certification of class actions in federal court under Fed.R.Civ.P. 23 are substantially similar to the Practice Book Requirements, federal case law is persuasive in construing these requirements. See Fetterman v. University ofConnecticut, 41 Conn. Sup. 141, 143, 559 A.2d 246 (1989).
 1 Numerosity
Caserta argues that the requirement of numerosity is satisfied because there are approximately 129 limited partners, all with similar claims. He alleges that the limited partners reside now or formerly in Connecticut, North Carolina, Vermont, Missouri, New Jersey and Florida, and that many are pension funds represented by corporate entities in other states. He further CT Page 2899 alleges that at least 100 of the limited partners who may live in Connecticut are located in at least three different judicial districts. He therefore argues that joinder would be impractical and cumbersome. Parker replies that the numerosity requirement can not be satisfied because it is not possible to determine the size of the class at this time. He contends that a class should consist only of those persons who elect before trial to be bound by the court's decision and that, because Caserta has not served his motion on the other limited partners, he does not know how many will opt out. Parker concludes that few other investors will join in the claim, thus making it unlikely that the numerosity requirement can be satisfied.
"There is no mechanical test for determining whether in a particular case the class is so numerous that joinder of all members is impracticable. . . . The issue is one for the court to be resolved in light of the facts and circumstances of the case." (Citation omitted.) Campbell v. New Milford Board of Education, supra, 36 Conn. Sup. 360-61. "Courts consider the number of parties involved, the expediency of joinder and the inconvenience of trying individual suits when making this determination. A numerical yardstick is not determinant — the test is whether the numbers make joinder impracticable." (Citations omitted.) Parkerv. Richardson Merrell Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 047107 (August 29, 1983, Levister, J.) (9 Conn. Law Trib. No. 35, p. 17). The court will also consider judicial economy, the ability of class members to institute individual suits; see Ward v. New Haven, supra,3 Conn. L. Rptr. 72, quoting Patrykus v. Gomilla, 121 F.R.D. 357, 361
(N.D. Ill. 1988); and geographical dispersion of class members. See Wood-Smith v. DiSerio, Martin, O'Connor Castighoni,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 104498 (April 29, 1991, Ryan, J.). "Impracticality does not mean impossibility but only that the joinder of all members of the class would be difficult or inconvenient." (Internal quotation marks omitted.) Wood-Smith v.DiSerio, Martin, O'Connor Castiglioni, supra, Superior Court, Docket No. 104498.
A party "must show some evidence or a reasonable estimate of the number of class members." Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 361. "While certification may not be based on `mere speculation,' a party seeking certification need not show the exact size of the class so long as the court can draw reasonable inferences from the facts before it as to the CT Page 2900 approximate size of the class and the infeasibility of joinder." (Citations omitted.) Crowley v. The Banking Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 237599 (March 6, 1992, Katz, J.) (6 Conn. L. Rptr. 134).
In the present case, Caserta appears to have made a reasonable estimate of class size based on his personal knowledge and the partnership records to which he has access. Management of such a large number of claimants who are geographically dispersed would be burdensome and could lead to unnecessary delays. See Campbellv. New Milford Board of Education, supra, 36 Conn. Sup. 361. Accordingly, joinder of the other limited partners would be impractical and the court finds that the numerosity requirement is satisfied.
Parker's contention that it is impossible to determine class size prior to notification of potential class members because many may choose to opt out is misplaced. Caserta states that he did send a letter to the limited partners informing them of his action. (Supplemental Brief, p. 2-3.) Furthermore, even if Caserta had not sent the letter, Practice Book §§ 9-7 and 9-8 do not require that notice be sent to potential class members prior to certification for the purpose of determining how many will opt out. Therefore, the court concludes that it is not necessary to inform potential class members of the action prior to certification in order to satisfy the numerosity requirement.
 2 Commonality
Caserta argues that the requirement of commonality is satisfied because all class members have been affected by Parker's wrongdoing in similar fashion, to different monetary degrees, based on the pro rata share each has in the limited partnership(s). He argues that, when the limited partnership(s) are wrongfully damaged by the acts of the general partner, then each and every limited partner suffers the same harmful effects. Parker replies that it is pointless to discuss the issue of commonality because Caserta cannot satisfy the numerosity requirement. Parker also contends that Caserta has set himself apart from and above the other limited partners because he has previously pursued and continues to pursue litigation against Parker on his own behalf, including the first four counts of the present complaint. Parker thus argues that he has substantial CT Page 2901 claims and defenses against Caserta which do not exist with respect to other members of the purported class.
"The requirement of commonality does not require a complete identity of legal and factual issues among all class members. . . . It only requires that some common questions exist, not that they predominate. . . . Thus, the mere fact that there may be factual differences is not fatal to class certification; . . . so that where the question of basic liability can be readily established by common issues the case is appropriate for a class action. . . . The fact that there may have to be an individual examination on the issue of damages has never been held to bar certification of a class. . . . In short, commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." (Citations omitted; emphasis in original; internal quotation marks omitted.) Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 362.
Here, Caserta and each of the other potential members of the class are linked by the common issue of Parker's liability for the alleged wrongdoing and the harmful effect it has had on the limited partnership(s). See Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 362. The fact that the limited partners may have experienced different degrees of monetary loss is immaterial. See id. Insofar as Caserta's past litigation against Parker or the first four counts of the present complaint are concerned, these claims seek individual relief and are separate from his claims in counts five through nine, which address the interests of the limited partnership(s) only. See id. Accordingly, the court finds that the requirement of commonality is satisfied.
 3 Typicality
Caserta argues that his claims in counts five through nine are typical of the claims of other class members. He argues that the claims address injuries and matters of interest affecting all of the limited partners, and that the outcome of the litigation will have a substantial impact on the individual limited partners as well as the partnership(s). Parker replies that the question of typicality is irrelevant because other requirements for class CT Page 2902 certification have not been satisfied.
"The principles governing the determination as to whether the claims or defenses of the representative party are typical of the claims or defenses of the class are quite similar to those discussed in connection with the requirement of commonality. . . . Thus, the requirement of typicality is satisfied when the claim of the representative party arises out of the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal or remedial theory." (Citation omitted; internal quotation marks omitted.) Campbell v. New MilfordBoard of Education, supra, 36 Conn. Sup. 365. "Any claims and defenses available to the representative parties will be available to other members of the class." Governors Grove Condominium Assn., Inc. v. HillDevelopment Corp. , 35 Conn. Sup. 199, 202, 404 A.2d 131 (1979). "The presence of minor factual variations is generally immaterial." Campbell v. New Milford Board of Education, supra,36 Conn. Sup. 365. "Differences in the amount of damages do not make a representative's claim atypical." Crowley v. The BankingCenter, supra, Superior Court, Docket No. 237599.
In the present case, Caserta and the other limited partners have a similar relationship to Parker. Consequently, the claims of the limited partners in counts five through nine arise out of the same course of conduct and are based on the same legal theories. See Campbell v. New Milford Board of Education, supra,36 Conn. Sup. 365. Differences in damages due to differences in pro rated shares of the limited partnership(s) are of no significance. See Crowley v. The Banking Center, supra, Superior Court, Docket No. 237599. Accordingly, the court finds that the requirement of typicality is satisfied.
 4 Adequacy of Representation
Caserta argues that he and his attorney are fully able to fairly and adequately protect and represent the interests of the other limited partners. Caserta contends that he is a highly educated professional and has been a limited partner since the partnership(s)' inception. Caserta argues that he has a substantial financial investment in the partnership(s), that he has experience as a partner in other limited partnerships and that he has the necessary financial resources to undertake the lawsuit. He also asserts that he will vigorously pursue the CT Page 2903 complaint on behalf of the class. He adds that his attorney is highly educated and experienced and has successfully prosecuted numerous cases involving similar issues.
Parker replies that the requirement of adequate representation involves due process considerations, because the absent class members will be conclusively bound by the judgment. He contends that due process requirements have not been met because members of the purported class have not been served with the class certification motion or with notification of their right to opt out of the class prior to certification. He maintains that the letter Caserta's attorney sent to the limited partners provides inadequate notice of the action because it advises them not to do anything and fails to advise them of their right to opt out. Parker also maintains that the present litigation is likely to create animosity between Caserta and the other limited partners, thus disqualifying him as a class representative. Parker finally questions Caserta's financial ability to prosecute a class action and argues that an evidentiary hearing is necessary to determine if Caserta is an adequate representative of the class.
"A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the . . . court." (Internal quotation marks omitted.) Fettermanv. University of Connecticut, supra, 41 Conn. Sup. 143. "[The] requirement [of adequacy of representation] is the most important because it involves due process considerations. Since the absent class members will be conclusively bound by the judgment, the court must ensure that their interests are adequately represented. . . . This requires the representative to have so substantial a stake in the outcome of the litigation that he assures the court that he will put up a real fight." (Citations omitted; internal quotation marks omitted.) Campbell v. NewMilford Board of Education, supra, 36 Conn. Sup. 366-67. "In the end, the question whether named plaintiffs are adequate class representatives is one committed to the sound discretion of the . . . court." Malchman v. Davis, 761 F.2d 893, 899 (2d Cir. 1985). The court stated in Bradford v. Brennan, 42 Conn. Sup. 534,545, 631 A.2d 1165 (1992), that "[i]n a modern class action it is fundamental that members of the class affected be given proper notice of the pendency of the action and subsequent proceedings in it." However, Practice Book § 9-10 provides in relevant part: "The judicial authority . . . may order that notice be given, in such manner as it may direct, of the pendency of the action, of a proposed settlement, of entry of judgment, or of any other proceedings in the CT Page 2904 action, including notice to the absent persons that they may come in and present claims and defenses if they so desire." (Emhasis added.) "[This] rule is much looser than [the similar Federal Rule], which requires
notice of the pendency of the action to be given." (Emphasis added.) Practice Book § 9-10, Authors' Comments. Therefore, there is no Practice Book requirement that notice be given to class members prior to certification of the class. Moreover, class members do not suffer due process consequences from lack of notice prior to certification, because they may exercise their right to opt out of the class at a later time. See Canzolino v.United Technologies Corp. , Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 048696 (March 31, 1998,Corradino, J.). Accordingly, Parker's arguments regarding notice lack merit as a basis for declaring that Caserta is not an adequate representative of the class.
As for Parker's claim of possible animosity between Caserta and the other limited partners, such allegations constitute mere speculation, since Parker makes no reference to any existing litigation between Caserta and the other partners. Caserta's financial interest and ability to prosecute the action also appear adequate. Although his interest represents only .7092% of the partnership, it is valued at $50,000, a significant amount, and Caserta is a successful professional who has more than $1.5 million in his IRA and personal accounts with which to undertake the lawsuit. (See Caserta's Affidavit on Standing and Evidentiary Hearings, ¶¶ 5, 6.) A determination as to whether Caserta is an adequate representative of the class is in the sound discretion of the court; see Malchman v. Davis, supra, 761 F.2d 899; and does not require an evidentiary hearing. Accordingly, the court finds that Caserta will fairly and adequately represent the interests of the class.
 5 Common Questions of Law or Fact
Caserta argues that questions of law and/or fact common to the members of the class predominate over individual issues of the limited partners in counts five through nine. Caserta states that his own individual claims in counts one through four will be prosecuted independently of the class, but that his other claims affect all of the limited partners. Parker finds it unnecessary to address this issue because he argues that the other requirements for class certification have not been satisfied. CT Page 2905
Practice Book § 9-8 requires that common questions of law or fact predominate over individual issues. "The key to the requirement . . . is that the common issues predominate, not that they be dispositive of the action; . . . so that the fact that some individual issues may remain after the common issues are resolved is unimportant." (Citation omitted; emphasis in original; internal quotation marks omitted.) Campbell v. NewMilford Board of Education, supra, 36 Conn. Sup. 368.
Here, Caserta's individual claims against Parker are addressed in counts one through four, while questions of common interest to the limited partners are addressed in counts five through nine. Accordingly, since the motion for class certification is limited to counts five through nine, the court finds that common questions of law or fact predominate over individual issues, thus satisfying the fifth requirement for class action certification.
 6 Superiority
Caserta argues that judicial economy would be well served by prosecuting counts five through nine as a class action. He argues that the equitable relief awarded in more than 100 separate lawsuits might be inconsistent and that a class action would conserve the resources of both the court and the parties.
The court must determine whether a class action is superior to other available methods of adjudication. See Practice Book § 9-8. The court must "consider what other procedures exist for disposing of the dispute i.e., individual suits, test case, joinder, intervention or consolidation." (Citations omitted.)Parker v. Richardson Merrell Co., supra, 9 Conn. Law Trib. 35. "A class situation is simply not efficient when so much in the way of individual proof by each of the class members will be required." (Citation omitted; internal quotation marks omitted.) Id.
In the present case, a class action would be preferable for reasons previously alluded to, including economy of judicial resources, the impracticality of joinder, and the possible inconsistency of more than 100 future judgments. Accordingly, the court finds that a class action is superior to other methods of adjudicating counts five through nine of Caserta's complaint. CT Page 2906
For all of the foregoing reasons, the court grants Caserta's motion to be certified as the authorized representative of a class known as "The Limited Partners of Fairfield Income Business Partners Limited Partnership and Rock Acquisition Limited Partnership" for purposes of prosecuting counts five through nine of the complaint. It is hereby ordered that this action shall proceed as a class action with regard to counts five through nine, and that appropriate notice be given to all class members in a manner to be directed by the court after receiving proposed orders from counsel for the parties.
SKOLNICK, J.