[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CONTEMPT
 FACTS
The parties have filed a stipulation of facts and an additional stipulation of facts, both of which the court accepts. They are both attached hereto as Exhibits A and B respectively. In connection with those stipulations the parties have introduced exhibits and at the hearing more were introduced.
 LAW I. JURISDICTION A. Sovereign Immunity
As the question of sovereign immunity addresses this court's jurisdiction it must be answered whenever raised. Practice Book § CT Page 1469210-33.
The basic rule is that the state may not be sued without its consent.Shay v. Rossi, 253 Conn. 134, 168. For our purposes there are three Connecticut exceptions to that rule. First, the state may consent to such a suit by legislation; Owner-Operator Independent Drivers Assn. v.State, 209 Conn. 679, 684-685; Berger, Lehman Association, Inc. v.State, 178 Conn. 352, 356; second where the claim is for an injunction and it has a constitutional basis, Horton v. Meskill, 172 Conn. 615; and third where the claim is for an injunction with factual claims that the state acted in excess of its statutory authority. Id.
It is only with the first exception that we are involved.
The state has consented to participate in arbitration and be bound by the awards. C.G.S. § 52-408.
The state has by legislation agreed that parties to arbitration may apply to this court to vacate, confirm or modify such an award. C.G.S. §§ 52-417, 418, 419, 420 423.
Once such a matter comes to this court the legislature has given this court authority to enter a judgment vacating, confirming, or modifying such an award. C.G.S. §§ 52-417, 418, 419 and 420 and 421. Such judgment is enforceable as if it had been rendered in any civil action.Kolenberg v. Board of Education of the City of Stamford, 206 Conn. 113,122.
Going to our particular action we find that in C.G.S. Chap. 68 employer means the State of Connecticut. C.G.S. § 5-270 (a). Sub-paragraph (b) of that section provides for legislative approval of the Agreement, which was had. It also provides for legislative approval of the award, which was had. Up to this point there is clear legislative intent to bind the state to the terms of the Agreement and to the award.
Finally we come to the question of whether the state can be liable for the enforcement of the award. It is so liable because the legislation makes it clear that the state has approved the award and allowed the law to provide that judgments enforcing awards may be entered against it.
 B. Exhaustion of Remedies
We are not involved with the judgment itself but only compliance therewith. Thus we are not involved with a grievance or a failure to comply with an arbitration award. We are only involved with a claim of contempt for failure to comply with a court order. Thus the idea that CT Page 14693 this matter is simply a violation of the award and thus must be sent back to the arbitrators as a violation of the collective bargaining agreement is misdirected.
There is no forum for a remedy for plaintiff other than this court.
This court has jurisdiction.
 II. VIOLATION OF COURT ORDER
The award which the court ordered enforced reads as follows:
 The Grievant's discharge is rescinded; all references to the discharge will be expunged from the Grievant's personnel files; the Grievant will be reinstated to his former position with full back pay; and the Grievant will be made whole for any and all other earnings or benefits lost as a result of his discharge.
The parties have stipulated that all references to his discharge have been expunged; he has been paid all of his lost wages, given lost leave times, sick time, vacation time and personal days. He has been given pay for all medical and health insurance expenses and proper retirement credits and benefits.
In addition he has been reinstated to his former position as an RTS1. What he claims is that he has not been reinstated to his "status quo ante" of the time of his termination.
The court finds that he has his title back; that he is not in as full control of the people in the Therapeutic Rehabilitation Department as he was; and is not the sole RTS1.
Since the time he left until his return another RTS1 (Martinez) has been put in place.
The job description for RTS1 is, in pertinent part, as of June 23, 1995 as follows:
PURPOSE OF CLASS:
 This class is accountable for supervising Rehabilitation Therapists and staff or administration of a professional habilitation/rehabilitation therapy program for physically, mentally and/or emotionally CT Page 14694 handicapped clients in a State facility or institution.
 GUIDELINES FOR CLASS USE:
This class may be used in the following ways:
 1. In a facility that has no Director or Rehabilitation Therapy Supervisor 2, this class has programmatic and administrative responsibility for a therapy program. Supervision of other employees is not necessary, provided there is supervision of a program in the absence of a Director or Supervisor 2. There may be only one (1) supervisor for the rehabilitation program.
 2. When there is a Director or Rehabilitation Therapy Supervisor 2, this class must supervise two (2) or more filled professional therapist positions.
 SUPERVISION RECEIVED:
 Receives general direction from a Rehabilitation Therapy Supervisor 2, Director of Rehabilitation Therapies or other employee of higher grade.
The parties provided that that job description was in place when plaintiff was separated from state service. The court received no evidence that the description ever changed.
In Exhibit 5 we find that the organizational chart of the Therapeutic Recreation staff at the time of Mr. Bender's termination did not include either a Director of Rehabilitation Therapy Supervisor 2. This is further suggested by Exhibit 13. Thus we are called back to the language of the job description that, "there may be only one (1) supervisor for the rehabilitation program." We now have two.
Plaintiff was on paid leave of absence from April 17, 1996 until he was terminated from his job with defendant on May 1, 1996. He later filed the grievance. The award was issued on October 22, 1997. After plaintiff's discharge Martinez was made a temporary RTS1 for the periods from April 17, 1996 to December 2, 1996 and from May 1, 1997 to October 31, 1997. The defendant claims that she was a permanent RTS1 from November 1, 1997 to date. Her promotion was finalized January 16, 1998 and made effective November 1, 1997. CT Page 14695
The two RTS1's are presently each supervising two separate groups of therapists. As of August 16, 2000 plaintiff has eight therapists and two or four summer employees. As of that date Martinez has three therapists and three summer employees plus a "1/2" employee.
In spite of the fact that plaintiff has duties which are solely those of an RTS1 he is not the sole supervisor for the rehabilitation program as he was when terminated.
 III. CLARITY
In order to find a defendant in contempt the order relied upon must be "some clear and express direction of the court." Blaydes v. Blaydes,187 Conn. 464, 467-8. The decree "should be sufficiently clear and definite in its terms for the defendant to be able to determine with reasonable certainty what conduct on his part is required." Adams v.Vaill, 158 Conn. 478, 485.
Our order here does not in anyway require that plaintiff have particular authority except as set forth in the job description for an RTS1.
The court finds that the defendant's actions were taken under mistaken beliefs but were not contemptuous. Further implementation of those erroneous actions would be a violation of the court order of January 5, 1998. This court would expect that the appropriate accommodations and amenities would be provided to plaintiff as before his termination.
The defendant is not in contempt.
Plaintiff is to be the sole RTS1 at the Long Lane facility.
The court awards no attorneys fees.
Norris L. O'Neill, J.
 EXHIBIT A
DOCKET NO: CV-98-0575747-S
GEORGE BENDER, Plaintiff v. STATE OF CONNECTICUT, DEPARTMENT OF CHILDREN AND FAMILIES, Defendant
SUPERIOR COURT JUDICIAL DISTRICT OF HARTFORD AT HARTFORD CT Page 14696
DECEMBER 17, 1999
 STIPULATION OF FACTS
1. The plaintiff George Bender, began working for the State of Connecticut, Department of Children and Families on June 12, 1981 at Long Lane School.
2. Mr. Bender was placed on a paid leave of absence on April 17, 1996 pending an investigation.
3. Mr. Bender was terminated from state service on May 1, 1996. Joint Exhibit 1 is a genuine copy of his letter of termination.
4. Mr. Bender filed a grievance in response to his termination. On October 22, 1997, an arbitration award was issued finding that Mr. Bender's dismissal was not for just cause. Joint Exhibit 2 is a genuine copy of the Arbitration Award.
5. The arbitration award stated:
 The Grievant's discharge is rescinded; all references to the discharge will be expunged from the Grievant's personnel files; the Grievant will be reinstated to his former position with full back pay; and the Grievant will be made whole for any and all other earnings or benefits lost as a result of his discharge.
6. At the time of his separation from state service, Mr. Bender held the position of Rehabilitation Therapist Supervisor 1 (RTS1). Joint Exhibit 3 is a genuine copy of the job description for an RTS1.
7. The job description for RTS1 was developed by the State of Connecticut, Department of Administrative Services, not Long Lane and applies to all state agencies.
8. After Mr. Bender's discharge from state service, Christine Martinez, a Rehabilitation Therapist 2, was placed on Temporary Service in a Higher Class (TSHC) to the position of Rehabilitation Therapist Supervisor 1.
9. Ms. Martinez held the Temporary Service in a Higher Class from April 17, 1996 to December 2, 1996 and from May 1, 1997 until October 31, 1997.
10. The only breaks in her service in TSHC were for maternity leave and CT Page 14697 when she was working part time from December 2, 1996 to May 1, 1997.
11. John Lachapelle, Superintendent of Long Lane School, and John Watts, the Assistant Superintendent of Long Lane School in charge of the Therapeutic Recreation Department, both requested that Ms. Martinez by promoted permanently to the position of RTS1. On January 16, 1998, the paper work was completed which promoted Ms. Martinez, through reclassification, to the position of Rehabilitation Therapy Supervisor 1. Her promotion was made effective retroactively to November 1, 1997. Joint Exhibit 4 is a genuine copy of the paper work that was completed to promote Ms. Martinez through reclassification.
12. Both John Lachapelle and John Watts believed that Ms. Martinez had been permanently promoted to the position of RTS1 before the arbitration award was issued.
13. At the time Mr. Bender was placed on a paid leave of absence, he was the only RTS1 and supervised all Therapeutic Recreation Department personnel. Mr. Bender reported to Assistant Superintendent John Watts, and had complete responsibility and oversight for the daily operations of the Therapeutic Recreation Department. Joint Exhibit 5 is an organizational chart of the Therapeutic Recreation staff at the time of Mr. Bender's termination.
14. Mr. Bender was reinstated to Long Lane on January 6, 1998, as an RTS1. At the time he was reinstated, Mr. Bender was placed in charge of completing a leisure survey for the Diagnostic Intake Unit (D.I.U.). The Diagnostic Intake Unit is a residential cottage where children are placed when they first are admitted to Long Lane. Mr. Bender was also in charge of developing activities for the D.I.U. and a therapeutic recreation program description for that unit. Mr. Bender was not assigned duties or responsibilities over the whole department. Joint Exhibit 6 is a genuine copy of the duties assigned to Mr. Bender when he was reinstated at Long Lane.
15. At the time of his reinstatement, Mr. Bender did not supervise any employees and did not have all of the duties he had prior to his termination.
16. When Mr. Bender was reinstated, Christina Martinez supervised employees in the Therapeutic Recreation Department, three Rehabilitation Therapist Assistants, and performed all other responsibilities other than those set forth in Joint Exhibit 6.
17. The State of Connecticut, Office of Labor Relations had informed the Department of Children and Family Services that in order to be in CT Page 14698 compliance with the arbitration award Mr. Bender had to be reinstated to his former job title, but that his duties could be different, as long as they were duties of an RTS1. Mr. Lachapelle and Mr. Wafts, believed they were in compliance with the arbitration award when Mr. Bender was reinstated.
18. On or about December 3, 1997, the plaintiff filed an Application to Confirm the Arbitration Award issued on October 22, 1997. On January 5, 1998, a judgment was entered confirming the arbitration award. Joint Exhibit 7 is a genuine copy of the notice of the court's judgment confirming the arbitration award.
19. On or about January 9, 1998, the plaintiff filed a Motion for Contempt, alleging that the Department of Children and Families was not complying with the arbitration award. Joint Exhibit 8 is a genuine copy of the Motion for Contempt filed by Mr. Bender.
20. In his Motion for Contempt, the plaintiff claims that the state
 A) has refused to reinstate the defendant to his former position;
 B) has refused to expunge all references to his discharge from his personnel file; and
 C) has refused to make whole the plaintiff for all earnings and benefits lost as a result of his wrongful termination, including but not limited to, lost leave time, monies paid for medical and health insurance and costs, and retirement benefits and credits.
21. As of this date, Mr. Bender has reviewed his personnel file and agrees that all references to his discharge have been expunged.
22. Mr. Bender has been paid all his lost wages and given lost leave times, including sick time, vacation time and personal days.
23. Mr. Bender has been paid for all medical and health insurance expenses.
24. Mr. Bender has been given his proper retirement benefits and credits.
25. Mr. Bender was reinstated as an RTS1 but alleges that he has not been given all the job duties he had prior to his termination. The only issue of dispute in this case is whether or not the state has complied with the Arbitration Award by reinstating Mr. Bender to his former position. CT Page 14699
26. Assistant Attorney General Maria Rodriguez, who represents the Department of Children and Families, and Attorney Kevin Deneen, who represents the plaintiff attempted to resolve all issues surrounding the Motion for Contempt and outstanding grievances filed by Mr. Bender. Said negotiations did not resolve all the outstanding issues.
27. In a memo dated March 25, 1998 (sic) Mr. Bender was informed that he would assume direct supervision of Ben Freeman, Wayne McCloud, Sean O'Connor and Sal Mollica on April 5, 1999. Joint Exhibit 9 is a genuine copy of that memo.
28. The only person Mr. Bender would not be supervising was Christina Martinez who was at the same position level that he was.
29. On April 22, 1999, Mr. Bender was sent a memo from John Watts clarifying his job duties. Joint Exhibit 10 is a genuine copy of the April 22, 1999 memo.
30. On May 28, 1999, Ms. Martinez was given a memo stating that she was being given supervision of Sal Mollica. Joint Exhibit 11 is a genuine copy of the May 28, 1999 memo.
31. Starting June 1, 1999, the Therapeutic Recreation Department job duties were divided as outlined in a memo dated June 4, 1999. Joint Exhibit 12 is a genuine copy of a description of the job duties for Mr. Bender and Ms. Martinez as of June 1, 1999.
32. The division of the job duties in the Therapeutic Recreational Department was also made with the knowledge that the Department had requested and was expecting more staff Interviews have been conducted and job offers have been made. It is expected that all the positions will be filled. Joint Exhibit 13 is a genuine copy of the division of staff in the Therapeutic Recreation Department currently.
33. At the time of Mr. Bender's discharge there were not positions at Long Lane for Rehabilitation Therapist 1 or Rehabilitation Therapist 2 in the music or art parenthetical. Joint Exhibit 14 a b are the job specs for Rehabilitation Therapists 1 2.
34. Mr. Bender is a member of New England Health Care Employees Union District 1199. Joint Exhibit 15 is a genuine copy of the collective bargaining agreement between the State of Connecticut and New England Health Care Employees Union District 1199.
35. It is Mr. Bender's position that the Department of Children and Families has not complied with the arbitration award in that DCF has CT Page 14700 failed to reinstate him to the status quo ante his termination. By way of remedy, he does not request that Ms. Martinez be demoted, but that he be reinstated to his full range of authority and responsibilities over the Therapeutic Recreation Department at Long Lane School.
36. It is the Department of Children and Families' position that it has complied with the award by returning Mr. Bender to the RTS1 position and giving him duties that may be performed by that position. Furthermore, it is DCF's position that the Fine Arts Program, with Rehabilitation Therapists with art and music parenthetical did not exist prior to Mr. Bender's termination, so even under his own standard, DCF is in compliance with the arbitration award.
PLAINTIFF DEFENDANT
GEORGE BENDER STATE OF CONNECTICUT, DEPARTMENT OF CHILDREN AND FAMILIES
 RICHARD BLUMENTHAL ATTORNEY GENERAL
 Charles Overend Assistant Attorney General
By: Kevin M. Deneen BY: Maria C. Rodriguez O'Malley, Deneen, Leary, Messina Assistant Attorney General Oswecki Office of the Attorney General 20 Maple Avenue 55 Elm Street P.O. Box 504 P.O. Box 120 Windsor, CT 06095 Hartford, CT 06141-0120 Juris No.: 44526 Juris No.: 404342 Tel: (860) 688-8505 Tel: (860) 808-5190
 EXHIBIT B
NO. CV-98-0575747-S
GEORGE D. BENDER, Plaintiff v. STATE OF CONNECTICUT, DEPARTMENT OF CHILDREN AND FAMILIES, Defendant
SUPERIOR COURT JUDICIAL DISTRICT OF HARTFORD
AUGUST 17, 2000 CT Page 14701
 ADDITIONAL STIPULATIONS OF FACT
George D. Bender is currently responsible for the open setting units at Long Lane School. Included in the open setting are the Diagnostic Intake Unit, four male residential cottages, and one female residential cottage. There is also another open setting cottage which is to be open soon and will be Mr. Bender's responsibilities.
Another Rehabilitation Therapist Supervisor 1 is responsible for secured settings at Long Lane School. Included in the secured setting are three secure units and one intermediate secure unit.
In accordance with the job description for Rehabilitation Therapy Supervisor 1, Mr. Bender has full responsibility for supervision of the Therapeutic Recreation/Rehabilitation Therapy Services in the open setting and all of its operations including the entire summer program, request and hiring of summer personnel, interviewing and hiring of new staff, policies and procedures, program development, staff scheduling, program and activities scheduling, budget, the participation on and/or the assignment of staff to agency or facility committees relating to the foregoing responsibilities and all other responsibilities not specifically listed.
In accordance with the job description for Rehabilitation Therapy Supervisor 1, Rehabilitation Therapy Supervisor for the secured unit has full responsibilities for supervision the Therapeutic Recreation/Rehabilitation Therapy Services in the secured setting and all of operations including the entire summer program, request and hiring of summer personnel interviewing and hiring of new staff, policies and procedures, program development, staff scheduling program and activities scheduling, budget, the participation on and/or the assignment of staff to agency or facility committees relating to the foregoing responsibilities, and all other responsibilities not specifically listed.
Current staff positions will be divided as follows: George D. Bender shall supervise one RT2 (Art), (Julie Nehring); two RT2's (Therapeutic Recreation), (Sue Sitter D Gray); two RTA1's (Carlos Guerrero Leanne Shoop) and one RTA2 (Sean O'Connor). The Recreation Therapy Supervisor of the secured setting will supervise, one RT2 (Art), (Martha Cuhhna), one RT2 (Therapeutic Recreation), (Sal Mollica) and one RTA2 (Wayne McCloud). The position of RT2 (Music), (Jennifer Wyatt), shall be utilized and supervised by each Recreation Therapy Supervisor when working in their respective settings. The Assistant Superintendent in charge of Therapeutic Recreation/Rehabilitation Therapy Department shall determine the division of the position of RT2 (Music) between the CT Page 14702 respective settings based on resident needs. The Recreation Therapy Supervisors shall share evaluative responsibilities for the position of RT2 (Music) and the position will be placed on the organizational chart under Mr. Bender.
PLAINTIFF DEFENDANT GEORGE BENDER STATE OF CONNECTICUT, DEPARTMENT OF CHILDREN AND FAMILIES
 RICHARD BLUMENTHAL ATTORNEY GENERAL
 Thomas P. Clifford, III Assistant Attorney General
BY: Kevin M. Deneen BY: Maria C. Rodriguez O'Malley, Deneen, Leary, Messina Assistant Attorney General Oswecki Office of the Attorney General 20 Maple Avenue 55 Elm Street P.O. Box 504 P.O. Box 120 Windsor, CT 06095 Hartford, CT 06141-0120 Juris No.: 44526 Juris No. 404342 Tel: (860) 688-8505 Tel: (860) 808-5190